**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **FRANK B. DAY and ARTHUR WONG,**<br><br>    Plaintiffs/Counter-Defendants,<br><br>v.<br><br>**ROBERT WHITE a/k/a ROBERT W. WHITE,**<br><br>    Defendant/Counter-Plaintiff.<br>_____ | 1:13-cv-00044 |

**TO:**  Kevin A. Rames, Esq.
   Semaj I. Johnson, Esq.
   Andrew C. Simpson, Esq.
   Emily A. Shoup, Esq.

**MEMORANDUM OPINION**

THIS MATTER came before the Court upon Plaintiffs' Motion to Amend First Amended Complaint (ECF No. 99) and memorandum in support thereof (ECF No. 100). Defendant filed a response opposing the motion (ECF No. 103), and Plaintiffs filed a reply thereto (ECF No. 104).

On February 28, 2019, the Third Circuit issued a judgment affirming one count and vacating one count of the District Court's grant of summary judgment in favor of Plaintiffs. *See Day v. White*, 764 F. App'x 164 (3d Cir. 2019). The basis for vacating was that Plaintiffs pleaded the wrong cause of action in their First Amended Complaint and that it was improper to grant summary judgment on a claim that was never pleaded. Because the instant Motion solely addresses the Count that was vacated, the Court will limit its recitation of the facts and accompanying analysis to that issue only.

Case: 1:13-cv-00044-WAL-GWC   Document #: 109   Filed: 08/26/20   Page 2 of 14

*Day v. White*
1:13-cv-0004
Memorandum Opinion
Page 2

The dispute before the Court stemmed in part from a loan that Plaintiffs and Defendant collectively procured from the Bank of St. Croix in the amount of $1,650,000 ("the BSC Loan"). After providing Defendant with an additional $300,000 to service his portion of the loan, Plaintiffs entered into a Settlement Agreement with Defendant that made Defendant "solely responsible" for payments on the BSC Loan once the additional $300,000 was exhausted. Defendant did not pay off the BSC Loan, and Plaintiffs eventually purchased the BSC Loan from the Bank of St. Croix. Plaintiffs then sued Defendant as owners of the BSC Loan for defaulting on his obligations on the loan. First Am. Compl. at 2-3 (ECF No. 36). The District Court then granted summary judgment not on the note itself, but on the theory that Defendant had breached the Settlement Agreement that had made him responsible for the BSC Loan:

> Defendant's argument that Plaintiffs are entitled to no damages because they have stepped into the shoes of the Bank of St. Croix misses the mark. Plaintiffs' entitlement to damages regarding the BSC Loan is not dependent on their status as holders of the BSC Loan. Rather, the Court held that Defendant became liable for the BSC Loan — as between the parties — by virtue of the parties' contractual arrangements. (Dkt. No. 67 at 23 ("the Court concludes that the Settlement Agreement unambiguously states that Defendant would assume full responsibility for the BSC Loan upon exhaustion of the additional $300,00 loan from Plaintiffs, and that nothing in the Deed in Lieu of Foreclosure or the Release Agreement alters that responsibility.")). After Defendant became responsible for the BSC Loan, however, "Plaintiffs remained borrowers of record as it relates to the Bank of St. Croix." (Id. at 22 n.19). In April 2013 — more than two years after the maturity date of the BSC Loan had passed, but during which Defendant had failed to pay off the BSC Loan (Dkt. No. 71-1 at 4) — Plaintiffs paid off the Note, thereby discharging the debt as it relates to the parties' obligation to the Bank of St. Croix. However, Defendant's responsibility for the BSC loan pursuant to the terms of the Settlement Agreement between the parties remains.

*Day v. White*, 2017 U.S. Dist. LEXIS 90135, at *24-25 (D.V.I. June 12, 2017).

The Third Circuit recognized that Plaintiffs had never actually pleaded that claim. *Day*, 764 Fed. App'x at 166-67. Rather, the appeals court said, Plaintiffs had postured their claim as holders of the loan, not as contracting parties on the Settlement Agreement:

> But Wong and Day never pleaded a claim for breach of the Settlement Agreement, so the Court could not properly grant them summary judgment on it. *See Michelson v. Exxon Research & Eng'g Co.*, 808 F.2d 1005, 1009 (3d Cir. 1987) ("We have a problem with the notion of granting summary judgment on a claim that was never pleaded."); *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437 (3d Cir. 1986) ("[W]e decline to permit a party to argue on appeal causes of action that were not pleaded in district court."). Nor did Wong and Day identify breach of the Settlement Agreement, with resulting damages, as a claim on which they were entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).
>
> Wong and Day concede, as they must, that their suit "was couched as an action on a Promissory Note," but they nevertheless now argue that "White's breach [of the Settlement Agreement] … was the cornerstone" of the suit. [Plaintiffs' Brief at 36]. This is telling for three reasons. First, actions to collect a debt are legally distinct from actions for breach of contract. *Carlos Warehouse v. Thomas*, 64 V.I. 173, 192 (V.I. Super. Ct. 2016). "[A] money debt is a primary obligation to pay a sum of money." 11 Corbin on Contracts § 55.5 (rev. ed. 2018). By contrast, "money damages are the legal substitute for the promised performance … ; the duty to pay them is a substituted or 'secondary' duty, one that arises only after a breach of the 'primary' duty created by the contract." Id. So an obligation to pay money damages for breach (which follows a failure to perform a promise) is conceptually distinct from an obligation to pay a debt.
>
> Second, apart from this formal difference between actions on debt and breach of contract claims, White's obligation flows from an entirely different agreement under the [First Amended Complaint] than it does under the District Court's holding. As claimed in the [First Amended Complaint], White's duty flows from the BSC Note to Wong and Day as its owners — not from the Settlement Agreement to Wong and Day as parties to that contract. So the Court did not simply grant summary judgment on an alternative theory of recovery; it granted judgment on a different cause of action, based on a different instrument.

*Id.* at 166-67.

Plaintiffs seek to amend their First Amended Complaint after learning of the Third Circuit's decision. Plaintiffs purports not to seek or add new factual allegations in support of their claim, but, rather, to amend the First Amended Complaint to clarify their claim on the BSC Loan is actually one for breach of the Settlement Agreement, which would harmonize the claim that the parties argued with the one that the District Court erroneously ruled upon and which has now been vacated. *See* Pls.' Mem. in Support of Mot. to Amend First Am. Cmplt. (ECF No. 100) at 1. Defendant resists Plaintiffs' Motion.

## I.     **STANDARDS FOR GRANTING MOTIONS TO AMEND**

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading and directs the Court to grant such leave "when justice so requires." As the United States Supreme Court has declared:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of allowance of the amendment, futility of amendment, etc.— the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Allowing amendments to correct errors in existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1474 (1990).

The Court also must determine whether good cause exists to entertain the motion, because, when a scheduling deadline has passed, a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

## II. DISCUSSION

The Court finds it is appropriate to grant Plaintiffs' Motion for several reasons. First, it is appropriate for this Court to entertain Plaintiffs' Motion even though this case has proceeded through summary judgment and appeal. Second, though Plaintiffs' Motion arrives more than five years after the deadline for amended pleadings, Plaintiffs have demonstrated good cause. Third, amendment would not be futile, because Plaintiffs are merely clarifying that their action on the BSC Loan is actually a claim for breach of the Settlement Agreement. Fourth, Defendant would not suffer prejudice as a result of amendment, despite parallel litigation addressing a separate settlement arrangement. Finally, amendment would not be futile, because the motion to amend is timely under the relation-back doctrine.

### A. APPROPRIATENESS OF MOTION TO AMEND FOLLOWING APPEAL

As a preliminary matter, the Court must first address whether granting Plaintiffs leave to amend is appropriate, given the unique procedural posture of a motion to amend that follows a judgment vacated on appeal.

Defendant cites three cases to support his position that a motion to amend should not be granted following an appeal: *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1338 (9th Cir. 1984); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 599 (5th Cir.1981); and *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 662 (7th Cir. 1978), *cert. denied* 439 U.S. 1135.

In *Beverly Hills Bancorp*, the Ninth Circuit concluded that a federal bankruptcy court had erred in permitting a bankruptcy trustee to amend his pleadings, because doing so was inconsistent with the appellate court's prior mandate allowing amendment for only the

limited purpose of determining the interpretation of a term in a settlement agreement. After the bankruptcy court allowed the trustee to add claims beyond the limits of what the appellate court had prescribed, the trustee prevailed at the bankruptcy court and then on appeal to the District Court. The appellate court reversed, concluding that "*although amendment of pleadings following remand may be permitted*, such amendment cannot be inconsistent with the appellate court's mandate. *Id.* at 1337. (emphasis added).

In *Dussouy*, the Fifth Circuit determined that a district court judge abused his discretion in granting a plaintiff's motion to amend his complaint, even though the motion was proposed after a pre-trial conference and only one week before the trial date. 660 F.2d at 598-99. Discovery had revealed that the plaintiff's theory of the case—conspiracy between an insurance company and an investment company to restrain trade—was incorrect, because the insurance company was not involved. *Id.* at 596-97. When the plaintiff learned that the insurance company was not involved in the case, the plaintiff voluntarily dismissed the insurance company and sought leave to amend his complaint so that he could add different co-conspirators, but the district court denied the motion. *Id.* at 597. The Fifth Circuit reversed the district court, concluding that the plaintiff's delay was understandable, given that the plaintiff promptly sought amendment upon recognition that the insurance company was not involved in the conspiracy. *Id.* at 599. This recognition and subsequent prompt action was indicative of the plaintiff's good faith in seeking amendment, the appeals court said. *Id.* The fact that amendment required him to assert new factual allegations did not allow him to gain a tactical advantage, because he did not know of them until they came to light during discovery. *Id.*

In *Cohen*, the Seventh Circuit upheld a district court's denial of a professor's motion to amend her complaint alleging that a private college subjected her to federal civil rights violations. 581 F.2d at 660. The professor had brought her initial claims under federal statutes that required her to demonstrate that the college was a state actor, which the district court stated that she failed to show. *Id.* The appellate court upheld dismissal, but after the district court denied her motion to amend her complaint, the appeals court granted a writ of mandamus directing the district court to consider the professor's motion. *Id.* The district court again denied the motion, because the professor's proposed amended complaint still fell short of properly alleging that the college was a state actor. *Id.* Though not necessary to the ruling, the appeals court did however explain that the fact that the case had already gone up and down on appeal was of no bar to the professor's seeking leave to amend:

> IIT's initial contention that Cohen had no right to amend because she elected to stand on her complaint and lost on appeal is without merit. Amendment in either the appellate or trial court is generally not allowed in such situations, as a contrary rule would in effect allow interlocutory appeals. However, an amendment can be allowed with leave of the Court of Appeals. This may be accomplished either by the appellate court itself granting leave to amend *or by remanding to the District Court to consider the motion*. The practice in this Circuit ordinarily is to remand for consideration, and in effect such action was taken in this case via the writ of mandamus.

*Cohen*, 581 F.2d at 662 (emphasis added) (citations omitted).

This trio of cases have done little in the last few decades to generate a cohesive body of law, but with scant Third Circuit authority on point, the Court has little else to work with. *Beverly Hills Bancorp* and *Cohen* show that remand following an appeal that reaches the merits—in and of itself—does not prevent a district court from addressing a motion to amend a complaint. That principle is quite clear, even though amendment ultimately was

not permitted in either of those cases. *Dussoy* demonstrates that a court may allow for a party to amend its complaint even when trial is imminent, though *Dussoy* does not help the Court address what should happen after a case has come back down on remand from an appellate court.[1]

Here, the Court reads footnote 6 of the Third Circuit's opinion as being in line with the directives from *Beverly Hills Bancorp* and *Cohen.* In that footnote, the Third Circuit stated: "We express no opinion as to whether, on remand, [Plaintiffs] should be granted leave to amend their complaint if requested." *Day*, 764 Fed. App'x. at 168, n.6. The Court interprets this neutrally worded instruction as affording the District Court broad discretion in deciding this Motion, so long as it is consistent with the Third Circuit's decision. For that reason, the Court concludes that it has the authority to consider a motion to amend at this stage of the case.

### B. GOOD CAUSE

Plaintiffs have established good cause for their failure to seek amendment prior to the expiration of the October 2, 2013 deadline set forth in the Scheduling Order. They filed this Motion on May 7, 2019, more than five-and-a-half years later. Defendant argues that there is no justification for the delay, given that Plaintiffs could have always pleaded breach of contract as an alternative theory of recovery at any point prior to October 2, 2013. Def.'s Opp. to Mot. to Amend ("Opp'n" at 1-2)(ECF No. 103). Plaintiffs argue that the proper way

---

[1] *Dussoy* also contained some language that could be viewed as unfavorable to Plaintiffs' position. In a footnote, the court gave its most significant pronouncement—at least for purpose of this case—by stating that even though "there is no blanket rule that denial of leave to amend after summary judgment is always appropriate," with a ruling on the merits "the concerns of finality in litigation become more compelling, and the litigant has had the benefit of a day in court, in some fashion, on the merits of his claim." *Dussoy*, 660 F.2d at 598, n.2.

to look at the timeline is to consider all activity between January 24, 2014—the date when Plaintiffs filed their motion for summary judgment on their case-in-chief—and March 18, 2019—the date when the Third Circuit issued its decision—to have effectively suspended time for purposes of considering any delay in abiding by the Scheduling Order. *See* Def.'s Reply at 4 (ECF No. 104).

The Court accepts Plaintiffs' argument that the Scheduling Order was mooted on January 24, 2014 and that they were diligent in their efforts in seeking amendment within a reasonable amount of time from the date the Third Circuit issued its decision.[2] Plaintiffs would have still needed to demonstrate good cause for their delay in bringing the Motion had it been filed any time between October 3, 2013 and January 24, 2014, and the Court would still have likely granted the amendment to cure the confusion that arose.[3] For scheduling purposes, the Court views the "good cause" clock to have restarted on April 7, 2019, when the Third Circuit denied Plaintiff's petition for rehearing. *See* Def.'s Reply at 6.

---

[2] Without accusing the Plaintiffs of having used this tactic, the Court is skeptical of parties who use court rulings—or appeals—on dispositive motions as a sounding board to assess the sufficiency of their allegations and claims in what is becoming commonly known as a "wait-and-see" approach. Even had this line of argument been raised by Defendant, the Court still would grant the Motion, given the Third Circuit's liberal amendment standards when a party seeks leave to amend a complaint after judgment has been entered. *See Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 367–68 (3d Cir. 2013); *see also Ahmed v. Dragovich*, 297 F.3d 201, 207–08 (3d Cir. 2002).

[3] The Court also notes that the District Court might have considered that the First Amended Complaint contained pleadings in the alternative:

> In this regard, the Court agrees with Plaintiffs' *alternative argument* that, even if the Court concludes that the BSC Note was, in fact, discharged by the purported assignment, Plaintiffs are nonetheless entitled to damages based on Defendant's breach of contract. (Dkt. No. 80 at 4). Plaintiffs note that the "Court's Order on summary judgment is couched in terms of contract formation by the parties, breach by [Defendant] and an entitlement to damages by [Plaintiffs]." (*Id.*). The Court agrees.

*Day v. White*, 2017 U.S. Dist. LEXIS 90135, at *25 n.16 (emphasis added).

The Court will treat the Motion as having come a little more than three-and-a-half months after the amended pleadings deadline, not five-and-a-half years late. As such, Plaintiffs have demonstrated good cause for their delay in filing this Motion.

### C. PREJUDICE

Defendant argues that he nevertheless would be prejudiced if the Court allows Plaintiffs to amend, because of a companion lawsuit (*White v. Day et. al.*, 1:18-cv-00018-WAL-GWC) brought by Defendant to enforce a settlement agreement that sought to dispose of the parties' obligations in this case. Specifically, Defendant argues that "[his] decisions relating to settling was based in part upon his attorney's assessment of this case as it stood at the time and in reliance upon the status of this case as one that had gone to final judgment. To now allow plaintiffs to assert a claim that they could have attempted to assert all along and had full knowledge of would dramatically alter the balance of the calculus that went into the settlement." Opp'n at 3.

The parties should not have assumed that the companion lawsuit would somehow alter any determinations made by the Court in *this case*. While the Court commends the parties for attempting to arrive at a settlement, they certainly were under no obligation to spread risk in a way that did not take into account the results of appeals or other potential alterations to the damages and judgments issued in the immediate case. As far as the Court is concerned, the settlement agreement at issue in the parallel case does not carry weight as to whether amendment would be unfair to Defendant in *this case*. Questions regarding that settlement can be answered through motions filed in *that case*.

*Day v. White*
1:13-cv-0004
Memorandum Opinion
Page 11

The Court might be more inclined to view Defendant's argument differently if Defendant was arguing that continued litigation in this case somehow violated the settlement agreement in the companion case, but that argument does not appear to have been made. Absent a motion to consolidate or some other vehicle through which the suits could be linked in a legally significant manner, the Court here cannot address the effect of the settlement agreement on the outcome of this case—if there is any at all. That being said, a quick look at the Complaint in the parallel case reveals that the alleged breach of the settlement agreement stems from Plaintiffs' failure to make various repairs to the subject property at the heart of this litigation. *See generally Day v. White* Cmplt.

There is always a contractual allocation of risk inherent in settlement agreements, and where the settlement agreement makes clear that a party agrees not only to assume the risk of certain conditions coming to light—such as how the result of an appeal might alter the bargaining positions of both parties—then that party should be held to its bargain and not entitled to reorganize the agreement when those uncertain conditions might emerge. The fact that a party has relied on the outcome of a case in crafting a settlement agreement when that outcome is pending appeal is not sufficient grounds to deny a motion for leave to amend a complaint. Defendant will always be free to address the issues surrounding the settlement agreement in the companion case, and perhaps Defendant's reliance on the outcome of this case will be significant in addressing various issues in the companion case, but, for now, the Court will decline to make those kinds of speculations. As such, the Court finds prejudice to be lacking.

*Day v. White*
1:13-cv-0004
Memorandum Opinion
Page 12

### D. FUTILITY

Defendant argues that amendment would be futile, because Plaintiffs' breach of contract claim would be untimely. He argues that the statute of limitations for breach of contract in the Virgin Islands is six years and that the BSC Loan—of which Defendant's alleged non-payment is the source of the claim—became due and payable on October 1, 2010. Opp'n at 3-4. Because more than two-and-a-half years have elapsed since October 1, 2016—the deadline for Plaintiffs to come within the limitations period—Defendant argues that their proposed amended claim should be barred. *Id.* Despite the expiration of the six-year statute of limitations, amendment would not be futile, because the "relation back" doctrine preserves the breach of contract claim. The Third Circuit has established that:

> Though not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3, (1984); *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). Thus, only where the opposing party is given "fair notice of the general fact situation and the legal theory upon which the amending party proceeds" will relation back be allowed. *Bensel*, 387 F.3d at 310. Conversely, amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

*Glover v. FDIC*, 698 F.3d 139, 145-46 (3d Cir. 2012). The facts and elements that make up the breach of contract claim were present and apparent in the initial Complaint and the First Amended Complaint, and the changes Plaintiffs seek to implement only concern the style of the cause of action and the relief sought. Though there is no question that a breach of contract claim is distinct from an action on a promissory note, the claim that the District Court ruled on and the claim that Plaintiffs seek to add by amendment flow from the exact

same underlying fact—that Defendant did not comply with his obligations under the BSC Loan. No new facts are introduced in the proposed amendments, and the Court views the proposed amendments as clarifications of a claim rather than a second bite at the apple. For these reasons, amendment would not be futile.

### III.   MAGISTRATE JUDGE'S AUTHORITY

Although neither party has raised the issue, the Court finds it appropriate to address its authority to enter this order, as opposed to issuing a Report and Recommendation to the District Court. A magistrate judge may not enter a final ruling on dispositive motions, pursuant to the authority conferred in Title 28, United States Code, Section 636(b)(1). Although there is some dispute among the federal courts as to whether a motion to amend a complaint is a dispositive motion or a non-dispositive motion, "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court under the 'clearly erroneous standard.'" *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (internal citation omitted). *See, e.g., Reeves v. DSI Sec. Servs., Inc.*, 395 Fed. App'x 544, 548 (11th Cir. 2010) ("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 Fed. App'x 897, 899-900 (11th Cir. 2010) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.") (citing cases); *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint was nondispositive, subject only to review for clear error."); *Wingerter v. Chester Case Quarry Co.*, 185 F.3d 657, 660 (7th Cir. 1998) (acknowledging magistrate

judge was authorized to rule on motion for leave to file third amended complaint); *Morrissey v. ASD Shared Servs., LLC*, 1:12-CV-4345-CAP-AJB, 2013 WL 11330647, at *2 n.2 (N.D. Ga. Sept. 3, 2013) (holding that a motion to amend a complaint is not a dispositive motion).

Accordingly, the undersigned concludes that a magistrate judge has authority to rule on a motion to amend a complaint and, therefore, resolves the Motion by order.

## IV. CONCLUSION

Having reviewed the proposed Second Amended Complaint and with due consideration for the policy favoring liberal allowance of amendments to pleadings, the Court will grant the motion.

Accordingly, it is now hereby **ORDERED:**

1. Plaintiffs' Motion to Amend First Amended Complaint (ECF No. 99) is **GRANTED**.

2. Plaintiffs shall file forthwith their Second Amended Complaint, as it appears as Attachment #2 (Exhibit B, Second Amended Complaint) filed with the said motion.

ENTER:

Dated: August 26, 2020

/s/ George W. Cannon, Jr.
GEORGE W. CANNON, JR.
MAGISTRATE JUDGE