## CERTIFICATION OF TRUST

The undersigned attorney hereby certifies that the attached is a true and correct copy of the first page, Article II entitled "Successor Trustees", Article VIII entitled "Trustee Powers, Rights and Duties" and the signature page of the Trust Agreement Establishing the Arthur Wong Revocable Trust Dated June 30, 2007, dated June 30, 2007.

Dated this _30TH_ day of _July_, 2013.

_____
Stuart J. Kohn, Attorney


STATE OF ILLINOIS          )
                           ) SS
COUNTY OF _Cook_           )

Subscribed and sworn to
before me this _30_ day of _July_, 2013.

_____
Notary Public

"OFFICIAL SEAL"
JOANNE SARANTOPOULOS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/8/2014

LP 4370992.1 \ 26670-93303

FIRST AMENDMENT AND RESTATEMENT OF THE
DECLARATION OF TRUST ESTABLISHING THE
ARTHUR WONG REVOCABLE TRUST DATED JUNE 30, 2007
ARTHUR WONG, GRANTOR

THIS FIRST AMENDMENT AND RESTATEMENT of the Declaration of Trust Establishing the Arthur Wong Revocable Trust Dated June 30, 2007, made this ___r-7__ day of __July_____, 2013, by and between ARTHUR WONG, of Chicago, Illinois, as Grantor (hereinafter sometimes referred to as the "Grantor"), and ARTHUR WONG, of Chicago, Illinois, as Trustee (hereinafter sometimes referred to as the "Trustee");

WITNESSETH:

WHEREAS, the Grantor created a trust known as the "Arthur Wong Revocable Trust Dated June 30, 2007" (hereinafter referred to as the "trust") for the primary benefit of the Grantor during his lifetime and, upon his death, for the primary benefit of the Grantor's wife, ELAINE WONG (hereinafter referred to as the "Grantor's wife"), and the Grantor's descendants, pursuant to the provisions of a Declaration of Trust entered into by and between the Grantor and the Trustee on June 30, 2007 (hereinafter referred to as the "Agreement"); and

WHEREAS, the Grantor has two (2) children now living, DAVID M. WONG (hereinafter referred to as "David") and MELISSA W. AAGESEN (hereinafter referred to as "Melissa"); and

WHEREAS, Section 1.1 of Article I of the Agreement provided that the Grantor, by a signed instrument delivered to the Trustee, may revoke or amend the Agreement from time to time; and

WHEREAS, it is the intention of the Grantor to amend and restate the terms of the Agreement, with the intent that the trust shall continue and be known as the "Arthur Wong Revocable Trust Dated June 30, 2007";

NOW, THEREFORE, pursuant to Section 1.1 of Article I of the Agreement, upon the affixing of the Grantor's signature hereto, the Grantor does hereby amend and restate the Agreement and deliver herein this First Amendment and Restatement to the Trustee. The Trustee, upon executing this First Amendment and Restatement, does acknowledge and accept this First Amendment and Restatement and agree to act in accordance herewith.

ARTICLE I
Rights of the Grantor

1.1 Right to Revoke, Alter and Amend. During the lifetime of the Grantor, the trust shall be revocable by the Grantor and the Grantor shall have the right and power, from time to time and at any time, by an instrument in writing signed by the Grantor and delivered to the Trustee to:

(a)     modify, alter and amend this Agreement;

(b)     revoke this Agreement and terminate the trust created pursuant to the provisions hereof, in whole or in part, and immediately upon such revocation and termination, the Trustee

LP 4104767.1 \ 26670-93303

## ARTICLE II
### Successor Trustees

2.1  Appointment of Successor Trustees.  Unless otherwise provided herein, the Trustee, or Co-Trustees acting unanimously, of each separate trust shall, while serving as Trustee, have the power to designate successor Trustees with respect to such separate trust or any successor trust.  In the event that any vacancy in the trusteeship or co-trusteeship of a separate trust shall not be filled pursuant to the exercise of the above power to designate successor Trustees, then David and Melissa, jointly shall be successor Co-Trustees, or the survivor of them shall be successor sole Trustee.

2.2  Trustee of Descendant Trust for Child of Grantor.  Notwithstanding the Trustee's power to designate successor Trustees, if a Descendant Trust shall be created hereunder for the benefit of a child of the Grantor, then said child shall be the initial sole Trustee of such trust.

ARTICLE VIII
Trustee Powers, Rights and Duties

8.1 Powers of Trustees. In addition to the powers conferred by law upon trustees, and not by way of limitation thereof, the Trustee of each separate trust is hereby authorized at any time or from time to time to exercise the following powers for the sole benefit of the beneficiary or beneficiaries of such trust or to refrain from exercising any of such powers:

(a) to make any allocation, division or distribution of the trust estate in kind, in money, or partly in kind and partly in money, including, but not limited to, by means of the purchase of an annuity contract or other property for the benefit of a beneficiary to whom a distribution is to be made, and to determine the value of property so allocated, divided or distributed;

(b) to hold, manage, improve, repair and control all property, real or personal, at any time forming a part of the trust estate; to continue to hold any or all property, real or personal, received by the Trustee as a part of the trust estate or as an addition to the trust estate, even though the same be of a character other than that prescribed by law for the investment of trust funds or be of a larger proportion in one or more investments than the trust estate should, but for this provision, hold, including residential property, and irrespective of any risk, nonproductiveness, or lack of diversification;

(c) to sell or to offer to sell for cash, credit, installments, in exchange for an annuity or otherwise, at public or private sale, to grant options to purchase, and to convey or exchange any and all of the property at any time forming a part of the trust estate, or any life estate, term of years, remainder or reversion therein for such price, including property of equivalent value (whether or not of like kind or similar use, and including life estates, terms of years, remainders or reversions) and upon such terms as the Trustee shall determine;

(d) to lease or license the use of any tangible or intangible personal property at any time forming a part of the trust estate upon such terms as the Trustee shall determine;

11

(e) to borrow money from any person including the Trustee; to extend or renew any existing indebtedness; to mortgage or pledge any property at any time forming a part of the trust estate; to guarantee payment of any loan from a third person to (i) a beneficiary, (ii) a trust (created other than under this Agreement) of which a beneficiary hereunder is a beneficiary (referred to in this subparagraph as a "related trust"), (iii) a partnership of which a beneficiary, a separate trust hereunder or any related trust is a general or limited partner, (iv) a land trust in which a beneficiary, a separate trust hereunder or any related trust holds a beneficial interest, (v) a corporation of which a beneficiary, a separate trust hereunder or any related trust owns an interest as a shareholder, (vi) a limited liability company or limited liability partnership of which a beneficiary, a separate trust hereunder or any related trust owns an interest as a member, or (vii) any other person, to the extent the Trustee deems a guarantee of such loan to be beneficial to a beneficiary, a separate trust hereunder or a related trust; and to pledge or hypothecate all or any part of the trust estate as collateral for such guarantee; and in connection with any such loan or guarantee of such loan, to execute any guarantee or indemnification with respect to any environmental matters, including but not limited to hazardous, toxic or dangerous waste, substance or material;

(f) to settle, compromise, contest, agree to arbitrate and be bound thereby, extend the time for payment or abandon claims (including claims for taxes or penalties) or demands in favor of or against the trust estate or any part thereof; to reduce the interest rate upon any indebtedness to the trust when the Trustee shall deem such to be for the best interests of the trust; to consent to the extension of the period of limitations on assessment of any tax or penalty; to execute any contract, waiver, release, closing agreement, settlement or stipulation in connection with the above;

(g) to sell, convey, release, mortgage, encumber, lease, partition, improve, manage, insure against loss, protect and subdivide any real estate, interests therein or parts thereof; to dedicate for public use, to vacate any subdivisions or parts thereof, to resubdivide, to contract to sell, to grant options to purchase, to sell on any terms; to convey, mortgage, pledge or otherwise encumber said property or any part thereof; to lease said property or any part thereof from time to time, in possession or reversion, by leases to commence in praesenti or in futuro and upon any terms and for any period of time, including a period extending beyond the term of the trust, and to renew or extend leases, to amend, change, or modify the terms and provisions of any leases and to grant options to lease, options to renew leases and options to purchase the whole or any part of the reversion; to partition or to exchange said real property, or any part thereof, for other real or personal property; to grant easements or charges of any kind; to release, convey or assign any right, title or interest in or about an easement appurtenant to said property or any part thereof; to construct and reconstruct, remodel, alter, repair, add to or take from any buildings on any real estate; to purchase or hold real estate, improved or unimproved, or any reversion in real estate subject to lease; to insure the Trustee and any person having an interest in or responsibility for the care, management or repair of such property against such risks as the Trustee deems advisable, and to charge the premiums therefore as an expense of the trust estate; to direct, or to authorize any other person to direct, the trustee of any land trust of which the trust is a beneficiary to mortgage, lease, convey or contract to convey the real estate held in such land trust or to execute and deliver deeds, mortgages, notes, and any and all documents pertaining to the property subject to such land trust in any matter regarding such trust; to execute assignments of all or any part of the beneficial interest in such land trust;

(h) to abandon any property, real or personal, which the Trustee shall deem to be worthless or not of sufficient value to warrant keeping, protecting or maintaining; to abstain from the payment of installments due on purchase contracts or mortgages, taxes, water, rents, assessments, repairs and maintenance with respect to any such property; to permit any such property to be lost by foreclosure, tax sale or other proceedings; to convey any such property for a nominal consideration or without

12

consideration; to permit the expiration of any renewal, sale, exchange or purchase option with respect to any property or lease thereof;

(i) to purchase or otherwise acquire, for cash, credit, installments, in exchange for an annuity or otherwise, or to invest, reinvest or refrain from investing the trust estate wholly or partially in common stock or in any other securities or other type or types of assets (without regard to whether such shall be listed on any stock exchange or other public market, registered with any securities commissions or similar bodies or subject to contractual, legal or other restrictions, including "investment letter" restrictions), including, but not limited to, bonds, notes, debentures, mortgages, preferred stocks, puts or calls, voting trust certificates, beneficial interests in land trusts, interests or shares in common trust funds, mutual funds, "open-end" or "closed-end" investment funds or trusts, real estate investment trusts or savings and loan or building and loan associations, oil, gas or other mineral interests or natural resources, motion picture, radio or television productions, programming and licenses, livestock or other animals, commodities, foreign exchanges, insurance or endowment policies, annuities, variable annuities or other property or undivided interests in property, foreign or domestic, as the Trustee may deem advisable without being limited by any statute or rule of law regarding investments by trustees; and in that connection, without limiting the generality of the foregoing, to invest the trust estate or any part thereof in any partnership, limited partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership or Massachusetts trust, and to have and to exercise all the powers of management and participation in the management necessary and incident to a membership in entity or venture, including the making of charitable contributions or of any election available under any tax law by such entity or venture, and at any time to participate in the incorporation of any such entity or venture; to open accounts, margin or otherwise, with brokerage firms, banks or others, to invest the funds of the trust estate in and to conduct, maintain and operate such accounts directly or through an agent for the purchase, sale, and exchange of commodities, stocks, bonds and other securities, and in connection therewith, to borrow money, obtain guarantees, and engage in all other activities necessary or incidental to conducting, maintaining and operating such accounts;

(j) to purchase or otherwise acquire, for cash, credit, installments, in exchange for an annuity or otherwise, or to invest in, reinvest in, retain or continue for an indefinite term, any business or business interests, as shareholder, creditor, partner, proprietor, member or otherwise, even though it may be closely or privately held or may constitute all or a large portion of the trust estate of a separate trust, without the necessity or requirement of application to or order from any court in any jurisdiction; to participate in the conduct of such business or to rely upon others to do so, and to take or delegate to others discretionary power to take any action with respect to its management and affairs which an individual could take as owner of such business, including the voting of stock, and the determination of all questions of policy; to take possession of the assets of such business, and to exercise complete control and management of such business, and in connection therewith to enter into and perform contracts, commitments, orders and engagements; to incur expenses and debts in connection with the conduct and operation of such business, and to pay and discharge such expenses and debts; to join in and execute partnership agreements, operating agreements and amendments thereto; to participate in any incorporation, reorganization, merger, consolidation, recapitalization, liquidation or dissolution of such business or any change in its nature and to retain and continue such changed or successor business; to invest additional capital in, subscribe to or buy additional stock or securities of or make or guarantee new or increased secured, unsecured or subordinated loans to any business; to rely upon the reports of certified public accountants as to the operations and financial condition of any business, without independent investigation and without obligation to file any report with the court in any jurisdiction; to elect, employ and compensate directors, officers, employees or agents of any business, who may include the Trustee or a director, officer

13

or agent of the Trustee; to deal with and act for such business in any capacity, including any banking or trust capacity and the loaning of money out of a Trustee's own funds, and to be compensated therefor; to sell, pledge or liquidate any interest in such business;

(k) to exercise, or refrain from exercising, any election available under any tax law; to establish out of income and credit to principal reasonable reserves for the depreciation of tangible property or the amortization or depletion of other wasting assets; to add to principal any amount previously credited to income that has not been distributed to a beneficiary and is not required to be distributed to a beneficiary; to amortize premiums paid on the purchase of securities or other property; to determine whether receipts shall constitute principal or income and whether expenses are properly chargeable to principal or income and, except as otherwise provided herein, the Trustee shall be governed in such determination by the provisions of the Principal and Income Act from time to time in force in the jurisdiction whose laws shall control the administration of the trust, or if there shall be no such act in force, by the Revised Uniform Principal and Income Act promulgated by the National Conference of Commissioners on Uniform State Laws, as then amended, and in any instance not governed by any such Act, the Trustee is hereby authorized to determine what shall be charged or credited to income and what to principal and the determination of the Trustee shall be conclusive upon all persons; provided, however, that (i) if the trust estate of any trust created hereunder which qualifies for the federal estate tax marital deduction is the recipient of benefits from or becomes the owner of an individual retirement account upon the death of the deceased owner of such account, income earned in such account after the death of the deceased owner of such account, whether or not distributed from such account, shall be treated as income of such trust for the period in which it is earned, and if the Trustee is required to pay all the income of such trust to the beneficiary thereof, the Trustee shall endeavor to collect and pay the income of such account to said beneficiary at least quarterly and, to the extent that all such income is not collected from such account, the deficiency shall be paid from the principal of such trust, and (ii) expenses attributable to principal distributions from such account shall be charged to the principal of such trust; provided, further, however, that any capital gain dividends from investments in mutual funds, common trust funds or real estate investment trusts shall be deemed principal;

(l) to employ and pay reasonable compensation to such agents, contractors, brokers, advisors, trustees, title-holders, escrowees, custodians, depositories, accountants, attorneys, investment counsel, appraisers, insurers and others (who may be the Trustee himself in such other capacity or any firm with which the Trustee is associated) as may be necessary or desirable in managing and protecting the trust estate, and to execute any general or limited direction or power of attorney to reflect such employment;

(m) to vote, or refrain from voting, any corporate stock either in person or by general or limited proxy, for any purpose, including, without limiting the generality of the foregoing, for the purpose of electing any Trustee or beneficiary as a director of any such corporation; to exercise, or refrain from exercising, or to sell any conversion privilege, warrant, option or subscription right with respect to any security forming a part of the trust estate; to consent to take any action in connection with and receive and retain any securities resulting from any reorganization, consolidation, merger, readjustment of the financial structure, sale, lease, mortgage, or other disposition of the assets of any corporation or other organization the securities of which may at any time form a part of the trust estate; to deposit any securities with or under the direction of a committee formed to protect said securities and to consent to or participate in any action taken or recommended by such committee; to pay all assessments, subscriptions and other sums of money which may seem expedient for the protection of the interest of such trust as the holder of such stocks, bonds or other securities; to enter into an agreement making said trust liable for a pro rata share of the liabilities of any corporation which is being dissolved and in which stock is held,

14

when in the opinion of the Trustee such action is necessary to the plan of liquidation and dissolution of any such corporation; to join in and vote for participation in or modification or cancellation of any restrictive purchase or retirement agreement relating to any partnership interest or corporate stock held as a portion of such trust; to join in the formation, modification, amendment, extension or cancellation of any voting trust;

(n) to accept, or refuse to accept, any additions or gifts of money or property to the trust estate and to receive distributions, devises or bequests from any other trust or estate or pursuant to the exercise of any power of appointment, and all such additions, gifts, distributions, devises and bequests shall be added to the trust estate and shall be held, administered and distributed as a part thereof;

(o) to transfer any property which may at any time form a part of the trust estate into a separate trust, including without limitation a land trust, for the benefit of the transferor-trust or of any beneficiary thereof, the trustee of such transferee-trust to be the transferor-Trustee or any other person, persons, corporation or combination thereof, upon such terms and conditions as the transferor-Trustee shall determine and from time to time to withdraw all or a portion of such property or the proceeds thereof or to revoke such a transferee-trust; to cause any securities, bank accounts, safety deposit boxes or vaults or other property, real or personal, which may at any time form a part of the trust estate to be issued, held, registered or recorded in any Trustee's individual name, or assumed name, either with or without indication of any fiduciary capacity, or in the name of a nominee, or in such form that title will pass by delivery;

(p) to apply for, purchase, accept, own and retain insurance policies and annuity contracts on the life of any person, and all right, title and interest in and to, and, except as otherwise provided herein, all rights, powers and privileges accruing under any life insurance policies or annuity contracts forming a part of the trust estate at any time, and the proceeds thereof shall be the property of, belong to and be exercisable by the Trustee as sole owner of said policies or contracts, including without limitation the right to receive or apply dividends or distributive shares of surplus, disability benefits, surrender values, or the proceeds of mature endowments; to obtain and receive from the respective insurers, or issuers, such advances and loans on account of such policies or contracts as may be available; to exercise any option, right, or privilege granted in a policy or contract; to sell, assign, or pledge a policy or contract; to change the beneficiary of a policy, except that no one other than the Trustee (as Trustee and not individually) may be named as beneficiary of a policy so changed; to convert a policy into other forms of insurance; and to exercise any and all other rights, powers and privileges which the owner of such policies or contracts may have thereunder, whether or not hereinabove mentioned; and the insurer or issuer under each such policy or contract is authorized to make payments to the Trustee, to act solely upon the instructions of the Trustee, and in every respect to deal solely with the Trustee as the absolute owner of said policy or contract, and such insurer or issuer shall not be responsible for the proper application or disposition of any funds paid by it to the Trustee; and the receipt of the Trustee to each insurer or issuer shall be effective to release and discharge such insurer or issuer for any payment so made, and shall be binding upon every beneficiary of each trust hereby created;

(q) except as may otherwise be expressly provided herein, to pay premiums on insurance on the life of any person and on any annuity contract; provided, however, that the Trustee shall be under no duty to pay any premium, assessment, or other charges necessary to maintain in force any insurance policy or contract, and shall be under no duty either to keep informed with respect to such payments, or to take any other action to maintain in force any such policy or contract;

15

(r) upon the maturity of each insurance policy and annuity contract which may at any time form part of the trust estate or of which the Trustee may at any time be designated as beneficiary or payee, by reason of the death of the insured or otherwise, to make timely proof of death and such other proofs as may be necessary to collect the proceeds due by reason of the maturing of such policies and contracts or permit the proceeds of any such policy or contract payable to the Trustee, or any share or portion of such proceeds, to remain with the insurer or issuer of any such annuity under any option available under the terms of such policies or contracts; to institute and maintain any proceeding at law or in equity to enforce any payment of any such policy or contract, and to do and perform any and all acts and things which may be necessary or proper for the purpose of collecting any sums which may be due and payable pursuant to the terms and provisions of any such policy or contract; provided, however, that the Trustee shall not be required to maintain any such litigation unless the Trustee shall be indemnified to the Trustee's satisfaction against all expenses and liabilities arising on account of such litigation; to compromise and adjust claims arising out of any such policy or contract, upon such terms and conditions as the Trustee may deem best, and the decisions of the Trustee shall be binding and conclusive upon all persons beneficially interested in the trust; to give receipts to any insurer or issuer of any such annuity for any amounts received by the Trustee as the proceeds of any such policy or contract, and such receipt by the Trustee shall be a complete discharge from further liability thereunder to such insurer or issuer of such annuity and such insurer or issuer of such annuity shall not be required to see to the application of any such proceeds received by the Trustee; provided, however, that the Trustee shall not reimburse any person interested in any insurance policy on account of the application of any of the proceeds or surrender value of such policy in satisfaction of any indebtedness to which such policy is subject, nor shall said person be subrogated to the rights of the creditors in any collateral because of such indebtedness;

(s) to open and maintain one or more savings accounts or checking accounts and to rent one or more safe deposit boxes or vaults with any bank, trust company, safe deposit box company, savings and loan association or building and loan association, public or private, wherever located, whether within or without the United States of America, even if, in the case of a bank or trust company, such bank or trust company shall be acting as Trustee of such trust; to deposit to the credit of such account or accounts all or any part of the funds belonging to the trust estate whether or not such funds may earn interest; from time to time to remove some or all of the items placed in any safe deposit box or vault, or to withdraw a portion or all of the funds so deposited in any such account; any such removal to be carried out by and any such withdrawal to be effected by a check, written direction or other instrument signed by the Trustee or such other person or persons as the Trustee may from time to time authorize, or if more than one Trustee shall be acting, by such one or more of the Trustees as shall be designated in writing by a majority of the Trustees, or by such other person or persons as said majority of the Trustees may from time to time authorize; and any such bank or company or association is hereby authorized to allow such person or persons access to the box or vault and to pay such check or other instrument and also to receive the same for deposit to the credit of any holder thereof when so signed and properly endorsed without inquiry of any kind, and access when allowed and payments when so made by such bank or company or association shall not be subject to criticism or objection by any person concerned or interested in any way in the trust;

(t) to lend the principal or income of the trust estate of a separate trust to a beneficiary of such trust, without interest and without security, or to make loans to or guarantee loans by any other person upon such terms as the Trustee may deem advisable, any such loan may be with or without security and may be subordinated to other obligations of the indebted party; to deal in every way and without limitation or restriction with the executor, trustee or other representative of any other trust or estate

16

whether or not the beneficiary has any existing or future interest therein and even though the Trustee is acting in such other capacity;

(u) to designate a name for any separate trust created hereunder, and a collective name for any two or more of such trusts, and from time to time, to change the name of any separate trust or the collective name of any two or more of such trusts; to merge, consolidate or transfer any part or all of any trust created hereunder (the "transferor trust") into any other trust (the "transferee trust"), whether testamentary or inter vivos, provided the substantive terms of the transferor trust and the transferee trust are substantially similar and the beneficiaries and remaindermen are identical; to accept, add to, retain and administer as a part of any trust created hereunder (the "recipient trust"), on the terms and provisions set forth herein with respect to said trust, any part or all of the assets of any other trust (the "transferring trust") whether testamentary or inter vivos, which may at any time be transferred to the trustee of the recipient trust by the trustee of the transferring trust, provided the substantive terms of the transferring trust and the recipient trust are substantially similar and the beneficiaries and remaindermen are identical; to divide any separate trust into two or more equal or unequal separate trusts to be held by the Trustee under the identical terms and for the identical beneficiaries and remaindermen as said trust shall have been held before such division; except as otherwise provided herein, to allocate different kinds or disproportionate shares of property or undivided interests in property of a separate trust among the beneficiaries thereof or among trusts into which such trust shall have been divided; to determine the value thereof; to make joint investments for any separate trusts hereunder or of which the Trustee is trustee or co-trustee, to designate a name for such joint investments and to hold such joint investments as a common fund for purposes of administration, dividing the net income (gains or losses) therefrom in the same proportion as the respective interests of such trusts therein;

(v) upon written request of a beneficiary, to render annual statements of the receipts and disbursements and of the financial condition of the trust to such beneficiary; to charge and receive from the trust estate a fair and just compensation (or to waive such compensation) for services rendered as Trustee; to be reimbursed from the trust estate for all reasonable expenses incurred in the management and distribution of the trust; in any contract or agreement made by the Trustee on behalf of the trust, to provide against personal liability of any individual Trustee, and the rights or obligations created under and by virtue of such contract or agreement shall belong to or be the obligation of such trust; to be reimbursed from the trust estate for any tax or penalty paid by the Trustee during the existence of the trust or thereafter, and if such trust estate is insufficient or if such trust be then terminated, to be reimbursed by the person or persons to whom the property of such trust shall have been distributed to the extent of the amount received by each such person (before making any distribution of either income or principal, the Trustee may accordingly require an undertaking by the distributee in form satisfactory to the Trustee to reimburse the Trustee for all such taxes and penalties, or the Trustee may withhold distribution of a reasonable amount required to meet any taxes, interest and penalties thereon pending release of any tax lien or the final determination of any tax controversy); to request from any beneficiary a full and complete release from, and indemnification for, any and all liabilities whatever attributable to any acts by the Trustee or any decisions by the Trustee to act or to refrain from acting in any manner whatsoever in his capacity as Trustee, including but not limited to, acts or decisions with respect to the investment of the assets of the trust estate, retention of any or all trust assets, and the sale or disposition of any or all trust assets; to secure the written approval by any beneficiary of any account or statement; to settle the account of a deceased, incapacitated or resigned Trustee, and the Trustee or any beneficiary of any separate trust may, without liability to any present or future beneficiary or any other person, approve the accounts of and give a full and complete release and discharge to any deceased, incapacitated or resigned Trustee; any approval, release or discharge given under this subsection (v) shall be conclusively binding, to the extent

17

allowable under applicable law, on all persons having any interest in the trust, including said beneficiary and all of said beneficiary's descendants (including then unborn descendants), heirs or appointees who may then have or thereafter acquire any interest in the trust;

(w) at any time and from time to time, and subject to revocation at any time, to delegate the authorities, discretions and powers, or any of them, herein conferred upon a Trustee, or the custody of any or all property comprising the trust estate, to any one or more Co-Trustees then acting, such delegations and revocations thereof to be evidenced by an instrument in writing delivered to the Co-Trustee or Co-Trustees of the trust to whom a delegation is being made or with respect to which a delegation is being revoked, such delegations to be effective upon the written acceptance thereof and such revocations to be effective upon delivery thereof; to transfer the situs of any or all trust assets to any other place whether within or without the United States; to appoint any bank or trust company as Substitute Trustee as to such assets, and at will to remove (and approve the accounts and give full release and discharge to) any Substitute Trustee so appointed and to appoint another such Substitute Trustee or to rescind such appointment;

(x) to transfer any shares of stock of an S corporation, shares of stock of a C corporation which is intended to qualify as and elect to be treated as an S corporation, or any assets which are intended to be used to acquire shares of stock of an S corporation, held by or allocated to any separate trust created hereunder (referred to in this subparagraph as the "original trust"), to one or more new trusts (referred to in this subparagraph as a "sub-trust") for the purpose of enabling each such sub-trust to qualify as a qualified subchapter S trust ("QSST"), as defined in the Code; to make all elections and take all steps as shall be necessary for each sub-trust created hereunder to qualify as a QSST; to hold and administer each such sub-trust created hereunder under such terms as are necessary for each such sub-trust to be a QSST, and, in particular, (i) to hold such sub-trust for the benefit of one person who shall then be a citizen or resident of the United States and a beneficiary of the original trust to whom the Trustee could have distributed the shares of stock or other assets from the original trust, (ii) to distribute all of the net income of such sub-trust to the beneficiary of such sub-trust from and after the date such sub-trust shall own stock in an S corporation, (iii) to distribute the principal of such sub-trust to the beneficiary of such sub-trust under the same terms as principal could have been distributed to said beneficiary from the original trust, (iv) to hold the trust estate of each sub-trust subject to the same testamentary power of appointment, whether limited or general, if any, which the beneficiary of such sub-trust would have held over the original trust, and (v) to allocate the then remaining trust estate of such sub-trust upon the death of the beneficiary thereof in separate shares to those persons to whom the trust estate of the sub-trust would have been allocated if the assets of the sub-trust had continued to be held as assets of the original trust and the original trust terminated on the death of said beneficiary, and retain each such share in trust by the Trustee as a separate trust of which the person for whom such share shall have been allocated shall be the beneficiary and to hold, administer and distribute such trust pursuant to the Agreement creating the sub-trust with the same principal dispositive terms as a Descendant Trust hereunder, as modified to the extent necessary to qualify as a QSST; provided, however, that if the Code is revised with respect to the requirements necessary for a trust to qualify as a QSST, or for any other reason, so that any provision of this subparagraph shall prevent any separate sub-trust created hereunder from qualifying as a QSST, such provision shall be stricken or conformed so that such sub-trust shall so qualify;

(y) to inspect and monitor businesses and real property (whether held directly or through a partnership, corporation, trust or other entity) for environmental damage or compliance (or possible non-compliance) with any environmental law or regulation thereunder; to conduct environmental assessments, audits and site monitoring of real property to determine compliance (or possible non-compliance) with

18

any environmental law or regulation thereunder; to take all appropriate remedial action to contain, cleanup or remove any environmental hazard including a spill, release, discharge or contamination or take steps to prevent environmental damage in the future, either on its own accord or in response to an action or order of any local, state or federal agency or court with respect to an actual or threatened violation of any environmental law or regulation thereunder; to abandon or refuse to accept any real property, or an interest in an entity which owns real property, which may have environmental damage; and to take all appropriate actions to prevent, identify or respond to actual or threatened violations of any environmental law or regulation thereunder;

(z) to make any payment, receive any money, take any action and make, execute and deliver and receive any contract, deed, instrument or document which may be deemed necessary or advisable to exercise any of the foregoing powers or to carry into effect any provision herein contained; in addition to the powers enumerated hereinabove, to do all other acts which in the judgment of the Trustee are necessary or desirable for the proper administration of the trust estate;

provided, however, that nothing contained in this Section 8.1 shall be construed to enable the Trustee to lend the principal or income of the trust estate, directly or indirectly, to any person who shall be deemed to be a grantor of such trust estate without adequate interest and security, nor enable any person to purchase, exchange or otherwise deal with or dispose of the principal or income of the trust estate for less than an adequate consideration in money or money's worth, except to the extent that such rights shall have been expressly retained by the Grantor upon the creation of the trust; and provided further, however, that nothing contained in this Section 8.1, or in any other provision of this Agreement, shall be construed to enable the Trustee to exercise any administrative or investment power to the extent it would cause all or any part of any distribution or any trust created hereunder intended to qualify for the federal estate tax marital deduction to not so qualify.

8.2 <u>Third Parties and Bond</u>. No person dealing with the Trustee of any separate trust shall be obligated to inquire as to the powers of such Trustee or to see to the application of any money or property delivered to such Trustee. The Trustee shall not be required to obtain authority from or approval of any court in the exercise of any power conferred upon him hereunder. No Trustee shall be required to make any current reports or accountings to any court nor to furnish a bond for the proper performance of the duties of the Trustee as Trustee of any separate trust; but if any such bond is nevertheless required by any law, statute or rule of court, no surety shall be required thereon.

8.3 <u>Trustee Liability</u>. No Trustee of any separate trust shall be liable for any loss, liability, expense or damage to the trust estate of such trust occasioned by such Trustee's acts or omissions in good faith in the administration of such trust (including acts or omissions in reliance on opinion of counsel) and in any event the Trustee shall be liable only for his own bad faith, willful misconduct or gross negligence, but not for honest errors of judgment. Except as otherwise specifically provided herein the Trustee may rely upon any notice, certificate, Will, affidavit, letter, telegram, or other paper or document believed by him to be valid or genuine, or upon any evidence deemed by him to be sufficient, in making any payment, allocation or distribution hereunder. The Trustee shall incur no liability for any payment or distribution made in good faith and without actual notice or knowledge of a changed condition or status affecting any person's interest in any separate trust. This Section 8.3 is intended to protect the Trustee under the stated circumstances, and is not intended to affect the rights hereunder of any person.

8.4 <u>Majority Determination</u>. Except as otherwise provided herein, in the event of a disagreement among the Trustees, the views of the majority shall prevail. The affirmative vote of a majority of those

19

authorized to vote on any matter shall constitute a majority. If but two Trustees shall be authorized to vote on a matter, the affirmative vote of both shall be required. Failure to obtain a majority, or the affirmative vote of both Trustees if there shall be only two Co-Trustees then acting, shall be treated as if the Trustees failed to act. All votes shall be taken within thirty (30) days of the date of the event which requires a decision to be made. Any Trustee who shall cast a negative vote with respect to any action or any failure to act shall in no way be liable or responsible for such action or failure to act.

20

IN WITNESS WHEREOF, the Grantor and the Trustee have each executed this instrument on the date first shown above.

_____
Arthur Wong, Grantor

_____
Arthur Wong, Trustee

31